UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CMR CONSTRUCTION & ROOFING,
LLC    A/A/O    LAWRENCE
FARRINGTON,

      Plaintiff,

v.                  Case No: 2:19-cv-442-FtM-29MRM

ASI    PREFERRED    INSURANCE
CORPORATION,

      Defendant.

_____

## OPINION AND ORDER

    This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. #50) filed on September 3, 2020. Plaintiff filed an Opposition (Doc. #61) on September 28, 2020, to which defendant filed a Reply (Doc. # 66) on October 5, 2020. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

**A. Factual Background**

    Defendant ASI Preferred Insurance Corporation (defendant or ASI) issued a residential insurance policy (the Policy) to non-party Lawrence Farrington (Farrington or the insured) which provided coverage for Farrington's home in Bonita Springs,

Florida.  (Doc. #50, p. 2; Doc. #61, p. 1.)[1]  Damage to Farrington's roof, allegedly caused by Hurricane Irma in September 2017, was discovered in March 2018.  (Doc. #46-1, p. 77; Doc. #49-3, p. 96; Doc. #50, p. 2; Doc. #61, p. 1.)  On September 11, 2018, Farrington contracted with plaintiff CMR Construction & Roofing, LLC (CMR or plaintiff) to perform roof repairs, and assigned to CMR any and all insurance rights, benefits, and proceeds under the Policy related to the roof.  (Doc. #3, ¶ 7; Doc. #3-1, p. 6.)

In mid-September 2018, ASI received its first notice that there was a loss covered by the Policy.[2]  (Doc. #46-1, pp. 4, 77.)  CMR subsequently submitted an estimate for the needed roof repairs, determining the entire roof needed to be replaced and estimating the replacement cost value as $224,080.40.  (Doc. #49-1, p. 76; Doc. #49-2, pp. 91-95.)  ASI investigated the claim while reserving its rights under the Policy due, *inter alia*, to the untimely notification of the loss.  (Doc. #46-1, p. 77.)

---

[1] The background facts are either undisputed or read in the light most favorable to plaintiff as the nonmoving party.  However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case.  Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[2] Defendant's motion states the loss was first reported to it on September 18, 2018, a fact which plaintiff admits in its opposition.  (Doc. #50, p. 2; Doc. #61, p. 1.)  However, the record demonstrates the loss was reported on September 12, 2018.  (Doc. #46-1, pp. 4, 77.)  The difference is not material to any issue in this motion.

An independent adjuster inspected the roof in September 2018 and determined it could be repaired for $763.31. (Doc. #46-1, pp. 85-87.)  In October 2018, ASI hired a licensed professional engineer to determine the cause and origin of the claimed roof damage. (Doc. #45-1, p. 3.)  The engineer inspected the property on November 9, 2018 and observed vertically cracked roof tiles, right corner cracked tiles, loose ridge/hip tiles, and two displaced tiles.  (Id. pp. 3-4.)  The engineer determined the vertically cracked tiles were caused by individuals walking on the roof, the corner cracked tiles were likely the result of thermal expansion or contraction, and the displaced tiles were caused by wind.  (Id. p. 4.)  Regarding the latter, the engineer determined the two displaced tiles were not cracked or broken and could be reattached without needing to be replaced.  (Id.)

Following these inspections and its claims investigation, ASI determined that the only damage covered by the Policy was the loose cap tiles, and that the cost to repair these fell below the Policy's $17,640 hurricane deductible.  (Doc. #46-1, pp. 4, 80-81.)  Accordingly, the claim for wind damage was denied payment.  (Id. p. 81.)  The failure to provide prompt notice of the loss was not listed as a reason for denying the claim.

**B. Procedural Background**

In May 2019, CMR filed a one-count breach of contract Complaint for Damages in the Circuit Court for the Twentieth

3

Judicial Circuit in and for Lee County, Florida.  (Doc. #1-1.)
Defendant removed the case to federal court on the basis of
diversity jurisdiction under 28 U.S.C. § 1332(a).  (Doc. #1.)
Defendant filed its Answer, Affirmative Defenses and Demand for
Jury Trial. (Doc. #9.)  ASI asserted as an affirmative defense
that recovery under the Policy was barred by the failure to comply
with the Policy requirement that ASI be provided with prompt notice
of a loss.  (Id. pp. 4-5.)

Defendant now seeks summary judgment on a variety of issues.
Specifically, ASI argues (1) recovery is barred as a matter of law
due to the late notice of the alleged loss; (2) plaintiff's
recovery is limited to actual cost value only; (3) plaintiff is
not entitled to recovery of "matching" damages; (4) ordinance or
law coverage damages are not recoverable; and (5) any damages
relating to the home's screened enclosure are limited by the
Policy.  (Doc. #50, pp. 9- 20.)  Plaintiff opposes all arguments
except for the last.

## II.

Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the
record taken as a whole could lead a rational trier of fact to
find for the nonmoving party."  Hickson Corp. v. N. Crossarm Co.,

Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted).  A fact is "material" if it may affect the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party.  Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."  St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296- 97 (11th Cir. 1983)).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

**A. "Prompt Notice" of Loss**

Defendant first argues that all recovery under the Policy is barred because the insured failed to provide it with prompt notice of the loss, as required by the Policy. (Doc. #50, p. 9.) The Policy requires that in case of loss to the insured property, the insured must "[g]ive prompt notice" to ASI. (Doc. #46-1, p. 32.) Defendant argues that because it was not given notice of the loss until a year after Hurricane Irma, the prompt notice requirement of the Policy was not met as a matter of law. (Doc. #50, pp. 9-13.) Plaintiff responds that this issue may not be resolved on a motion for summary judgment because there are material disputed facts, which must be resolved by a jury. (Doc. #61, pp. 4-5.)

Insurance policies often require an insured to provide the insurer with "prompt notice" (or some functionally equivalent phrase) of loss to the insured property. The purpose of a notice provision in an insurance policy is to allow an insurer "to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." LoBello v. State Farm Fla. Ins. Co., 152 So. 3d 595, 598 (Fla. 2d DCA 2014) (citation omitted). In Florida[3], a notice

---

[3] In this diversity case, Florida substantive law applies because the insurance contract was negotiated in Florida. PDQ

of damage is generally a pre-condition to a claim.  Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985).  An insured's failure to give timely notice under such a policy provision is "a legal basis for the denial of recovery under the policy."  Ideal Mut. Ins. Co. v. Waldrep, 400 So. 2d 782, 785 (Fla. 3d DCA 1981); see also LoBello, 152 So. 3d at 599.

Most Florida cases follow a two-step analysis to determine whether an insured's notice to the insurer sufficiently complied with such a policy requirement.  Rodriguez v. Avatar Prop. & Cas. Ins. Co., 290 So. 3d 560, 564 (Fla. 2d DCA 2020) (citation omitted).  Essentially, the inquiry involves a determination of whether the notice of loss was timely and, if not, a determination of whether the insurer was prejudiced by the untimely notice. LoBello, 152 So. 3d at 599.

**(1)  Timely Notice**

The first step "is to determine whether or not the notice was timely given."  Rodriguez, 290 So. 3d at 564 (citation omitted). This requires the identification of the triggering event from which the time period is measured and the determination of whether the notice was sufficiently prompt.  A triggering event must be of sufficient consequence to trigger an insured's duty to provide

---

Coolidge Fromad, LLC v. Landmark Am. Ins. Co., 566 F. App'x 845, 847 (11th Cir. 2014).

notice.  See Waldrep, 400 So. 2d at 785 (""Notice is necessary
when there has been an occurrence that should lead a reasonable
and prudent man to believe that a claim for damages would arise.").
The hurricane itself may or may not be the event that would trigger
the notice requirement, Laquer v. Citizens Prop. Ins. Corp., 167
So. 3d 470, 473–75 (Fla. 3d DCA 2015), but neither awareness of
the full extent of the damage nor the determination of causation
are necessary for the notice requirement to be triggered.  See
1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.,
112 So. 3d 541, 543 (Fla. 3d DCA 2013) ("[A]n insured must give
notice of the loss that implicates a potential claim without
waiting for the full extent of the damages to become apparent.");
Waldrep, 400 So. 2d at 785 ("[T]he insured could not wait until
the full extent of the damage to the aircraft was apparent, because
the policy covered any 'occurrence' resulting in injury to the
aircraft.").

"Prompt" is undefined in the Policy, but its meaning is well
settled under Florida law.  "Prompt" and other comparable phrases,
like "immediate" and "as soon as practicable," do not require
instantaneous notice.  Cont'l Cas. Co. v. Shoffstall, 198 So. 2d
654, 656 (Fla. 2d DCA 1967).  Rather, these phrases mean that
notice should be provided "with reasonable dispatch and within a
reasonable time in view of all of the facts and circumstances of
the particular case."  Laquer, 167 So. 3d at 474 (quoting Yacht

Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co., 599 F. App'x. 875, 879 (11th Cir. 2015)).  The determination of whether an insured provides "prompt" notice of a loss to an insurer is usually a question for the finder of fact after considering all the facts and circumstances of each particular case.  Himmel v. Avatar Prop. & Cas. Ins. Co., 257 So. 3d 488, 492 (Fla. 4th DCA 2018) (citation omitted); Everett v. Avatar Prop. & Cas. Ins. Co., 2D19-1563, 2021 WL 300443, *4 (Fla. 2d DCA Jan. 29, 2021) (citations omitted).  Florida courts have not created a bright line rule for when notice to an insurer is no longer "prompt." Restoration Constr., LLC v. SafePoint Ins. Co., 308 So. 3d 649, 652 (Fla. 4th DCA 2020).

While resolution of a promptness issue is usually for a jury, Florida cases have recognized that "this issue of fact may sometimes be resolved by summary judgment." Laquer, 167 So. 3d at 474; see also Rodriguez, 290 So. 3d at 564.

**(2)  Prejudice From Lack of Timely Notice**

In Florida, a failure to give timely notice creates a rebuttable presumption of prejudice to the insurer.  PDQ, 566 Fed. App'x at 849 (citing Macias, 475 So. 2d at 1217-18).  "The burden is 'on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts.'"  Id. (quoting Macias, 475 So. 2d at 1218).

> To carry this burden, an insured may submit evidence
> creating a dispute of fact as to: "(a) whether better
> conclusions could have been drawn without the delay" in
> providing notice, "(b) whether those conclusions could
> have been drawn more easily," "(c) whether the repairs
> to the affected areas that took place in the interim
> would complicate an evaluation of the extent of the
> damage or [the insured's] efforts to mitigate its
> damages," or (d) whether "an investigation conducted
> immediately following the occurrence would not have
> disclosed anything materially different from that
> disclosed by the delayed investigation."

Lehrfield, 396 F. Supp. 3d at 1184 (quoting PDQ, 566 F. App'x at

849-50); see also Yacht Club, 599 F. App'x at 882 ("[I]f an

investigation conducted immediately following the occurrence would

not have disclosed anything materially different from that

disclosed by the delayed investigation, an insured may rebut the

presumption." (marks and citations omitted)).

"Whether the presumption of prejudice to the insurer has been

overcome is 'ordinarily . . . a separate issue of fact.'" De La

Rosa v. Fla. Peninsula Ins. Co., 246 So. 3d 438, 441 (Fla. 4th DCA

2018) (citation omitted). Prejudice is properly resolved on

summary judgment, however, where an insured fails to present

evidence sufficient to rebut the presumption. PDQ, 566 F. App'x

at 849 (citations omitted).

### (3)   Application of Legal Principles

#### (a) Prompt Notice

The Court rejects plaintiff's suggestion that the promptness

of notice "is only appropriate for a jury's determination." (Doc.

#61, pp. 4-5); see Laquer, 167 So. 3d at 474; Yacht Club, 599 F. App'x at 879; PDQ, 566 F. App'x at 848.

The undisputed summary judgment facts are that Hurricane Irma passed through the Bonita Springs area in September 2017; plaintiff first became aware of the roof damage in March 2018; and the claim was not reported to the insurer until September 2018.  While the record is less clear as to when the insured became aware of the damage, a reasonable inference is that he became aware of the condition of the roof at or near the time he hired plaintiff to inspect his roof.  Despite defendant's focus on the date of Hurricane Irma in September 2017, the arguably applicable triggering date for the notice requirement is the date the damage was discovered, March 2018.  Accordingly, the issue is whether the six-month delay between discovery of the damage in March 2018 and reporting it to the insurer in September 2018 constitutes prompt notice under the Policy.

As plaintiff acknowledges, the main issue is "whether six months is within the timeframe of a reasonably prudent person." (Doc. #61, p. 6.)  While "there is no 'bright-line' rule under Florida law setting forth a particular period of time beyond which notice cannot be considered 'prompt,'" Yacht Club, 599 F. App'x at 879, several courts have found similar delays untimely as a matter of law.  See, e.g., PDQ, 566 F. App'x at 849 (six months); Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co., 2020 WL

1692177, *2 (S.D. Fla. Feb. 24, 2020) (seven months); Lehrfield v. Liberty Mut. Fire Ins. Co., 396 F. Supp. 3d 1178, 1183 (S.D. Fla. 2019) (eight months).

Plaintiff's corporate representative testified that he had "[n]o idea" why the claim was not reported until September 2018. (Doc. #49-1, p. 44.) When asked why he waited to report the claim, Farrington testified, "Probably because I didn't think much was wrong." (Doc. #48-1, pp. 44-45.) However, even if Farrington was not aware of the full extent of the damage, "an insured's good faith belief that the damage is trivial or not covered by the policy is insufficient to justify non-compliance with the policy's notice provision." Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd., 2012 WL 266438, *4 (S.D. Fla. Jan. 30, 2012); see also Yacht Club, 599 F. App'x at 880 ("Whatever concerns the Board had about the extent of damage and its deductible are not relevant under Florida law. Prompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible."). Having considered the evidence in the record as well as the arguments of the parties, the Court finds as a matter of law that prompt notice was not provided in this case. See Tamiami Condo., 2020 WL 1692177, *2 (finding no genuine dispute concerning whether notice was prompt where record indicated plaintiff was aware of hurricane damage seven months before reporting the claim and hired a roofing

contractor shortly after the storm).  Accordingly, the Court proceeds to the question of prejudice.

### (b) Prejudice to Insurer

Plaintiff suggests that the evidence submitted by defendant is insufficient to demonstrate prejudice.  (Doc. #61, pp. 7-8.) However, since the Court has determined prompt notice of the loss was not given, defendant's burden of demonstrating prejudice is satisfied by the presumption, and the burden is shifted to plaintiff to overcome the presumption of prejudice.  See Yacht Club, 599 F. App'x at 881 ("The Yacht Club criticizes Lexington for failing to place any evidence in the record to show that it was prejudiced by the late notice.  Such a requirement, however, would flip the burden from the insured to the insurer, which is contrary to Florida law.").

Plaintiff argues there is sufficient evidence in the record to show defendant was not prejudiced, thus rebutting the presumption, or at the very least enough evidence to create a jury question on the issue.  (Doc. #61, p. 9.)  Plaintiff asserts that prejudice is rebutted because defendant was able to determine the cause of the roof damage.  (Id. p. 7.)

But defendant has presented evidence that its investigation was impacted by the delayed notice.  In his declaration, the engineer hired by defendant asserts that although he was able to determine the cause of the observed damage, "the passage of time

from the date of loss until [his] inspection hindered [his] ability to determine a general time-frame of when the damage occurred." (Doc. #45-1, p. 4.)   The engineer also states that "[a] timely inspection would have allowed [him] to more easily determine whether the conditions [he] observed on the roof resulted from post-loss maintenance and/or repairs, or if they were present before Hurricane Irma."[4]   (Id.)   This was corroborated by plaintiff's own expert engineer, who testified at a deposition that "the closer you inspect to the actual event, the more data you'll be able to collect."  (Doc. #47-1, pp. 77-78.)  When asked if it would have assisted him to have inspected the roof closer in time to Hurricane Irma to make a better determination, plaintiff's engineer agreed that "[i]t would help."  (Id. p. 77); see PDQ, 566 F. App'x at 849-50 (listing "whether better conclusions could have been drawn without the delay" and "whether those conclusions could have been drawn more easily" as factors in determining whether an insured rebuts the presumption of prejudice).

However, although initially reserving its right to deny the claim due to the failure to provide prompt notice, defendant ultimately denied the claim solely due to its determination that

---

[4] Plaintiff argues that this assertion should be stricken because it contradicts the engineer's determination as to the cause of the roof damage.  (Doc. #61, p. 7.)  The Court disagrees.  As previously noted, the ability to determine causation does not mean prejudice does not exist.  Yacht Club, 599 F. App'x at 881.

the damage fell below the amount of the policy's hurricane deductible. This fact undermines defendant's suggestion that the delayed notice affected its ability to investigate the claim.

The evidence is similarly contradictory as to whether the condition of the roof materially changed before defendant was alerted to the damage. On the one hand, the evidence does not suggest the damage to the roof worsened between the date of discovery and the date of notification, a factor the Eleventh Circuit has focused on in finding prejudice to an insurer. Yacht Club, 599 F. App'x at 881 ("[E]ven The Yacht Club's own expert acknowledged that the structure sustained additional damage because repairs were not made immediately after Hurricane Wilma. . . . This is evidence of the prejudicial effect of the passage of time."); PDQ, 566 F. App'x at 850 ("Nor does PDQ proffer anything to indicate that the condition of the Property was in the same condition as it was after the storm. In fact, PDQ has indicated that the damages got worse over time."). On the other hand, there is also evidence that Farrington hired someone to make minor repairs to the roof, although it is unclear as to when these repairs took place. (Doc. #48-1, p. 22); see Yacht Club, 599 F. App'x at 881 ("The Yacht Club undertook certain repairs before filing a claim with Lexington. Lexington was prejudiced by not being able to investigate prior to those repairs and by not participating in the repair of those damages.").

Viewing it in the light most favorable to plaintiff as the non-moving party, the Court finds the record contains conflicting evidence as to "whether better conclusions could have been drawn without the delay," "whether those conclusions could have been drawn more easily," "whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of the damage," and whether "an investigation conducted immediately following the occurrence would not have disclosed anything materially different from that disclosed by the delayed investigation." Lehrfield, 396 F. Supp. 3d at 1184 (quoting PDQ, 566 F. App'x at 849-50). The Court concludes there is sufficient evidence in the record to create a jury question on this issue of whether the presumption of prejudice has been rebutted. See Kendall Lakes, 2012 WL 266438, *7 ("[W]hether a prompt investigation would have enabled Pacific to determine the cause of the damage with greater certainty or to take steps to mitigate damages and, if so, whether Pacific was placed at a substantial disadvantage as to be prejudiced by the delay, present genuine questions of material fact that cannot be resolved on a motion for summary judgment.").

**B. Replacement Cost Value Damages**

The Policy at issue contains a loss settlement provision stating that property losses to buildings covered by the Policy, such as dwellings, are settled at replacement cost without

deduction for depreciation.  (Doc. #46-1, pp. 14, 18.)  However, the Policy also states that the insurer "will pay no more than the actual cash value of the damage until actual repair or replacement is complete."  (Id. p. 18.)  It is undisputed that none of the repairs in plaintiff's $224,080.40 estimate have been completed yet.  Defendant therefore argues that plaintiff is barred from seeking replacement cost value (RCV) damages in this case.  (Doc. #50, pp. 13-16.)  The Court agrees.

In Buckley Towers Condominium, Inc. v. QBE Insurance Corporation, the court stated:

> In the first place, the insurance contract unambiguously requires the insured to repair its property before receiving RCV damages.  The insurance contract specifically provides that QBE "will not pay on a replacement cost basis for any loss or damage (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." . . .  The insurance contract contains no allowances for advance payments to fund repairs. Both parties agree, and the record undeniably establishes, that Buckley Towers never completed repairs and, thus, would be barred from recovering RCV damages under the plain terms of the contract.

Id. at 662-63; see also CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co., 2021 WL 246201, *2 (11th Cir. Jan. 26, 2021) ("The insurance policy provides that a claim for replacement cost value will not be paid '[u]ntil the lost or damaged property is actually repaired or replaced' and '[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage.'

That 'until and unless' provision is plain and unambiguous. It means that Empire was not obligated to pay CMR the replacement cost value until CMR had actually made the repairs and incurred the costs of doing so."); Ceballo v. Citizens Prop. Ins. Corp., 967 So. 2d 811, 815 (Fla. 2007) ("[C]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed."); Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp., 2012 WL 13012457, *5 (S.D. Fla. May 8, 2012) ("The Court agrees with QBE that it owes no coverage for replacement-cost-value benefits for items that Palm Bay has not repaired or replaced. The policy states plainly that QBE 'will not pay on a replacement cost basis for any loss or damage' '[u]ntil the lost or damaged property is actually repaired or replaced.' . . . . Here, where repairs have yet to occur, the policy by its plain language does not afford replacement-cost-value coverage."); Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp., 2011 WL 6754063, *11 (S.D. Fla. Dec. 22, 2011) ("As QBE correctly argues, the policy plainly provides RCV coverage only after 'the lost or damaged property is actually repaired or replaced,' and even then only if 'the repairs or replacement[s] are made as soon as reasonably possible after the loss or damage.' Here, the repairs have yet to occur; therefore, the policy does not afford RCV coverage." (citation omitted)).

Plaintiff relies mainly upon Citizens Property Insurance Corporation v. Tio, 304 So. 3d 1278 (Fla. 3d DCA 2020). (Doc. #61, pp. 9-11.) In Tio, the insurer argued section 627.011(3), Florida Statutes, limited the damages a jury may award for breach of an insurance contract. Id. at 1280. Here, while defendant cites to section 627.7011(3) in support, its argument is based on the language of the Policy. (Doc. #50, p. 13, 16) ("The plain language of the policy limits Plaintiff's initial recovery to ACV only, until repairs have been made. . . . The policy and Florida case law are clear in that Plaintiff is not able to recover the RCV amounts sought in its estimate based on the fact that the estimated repairs have not yet been performed."). Because the insurer apparently did not argue that RCV damages were precluded under the language of the policy, Tio is not applicable to this case.

The Eleventh Circuit has rejected plaintiff's argument that defendant's failure to tender ACV prevented the repairs from taking place (Doc. #61, p. 11):

> Under Florida's binding law, . . . courts are not free to rewrite the terms of an insurance contract and where a policy provision "is clear and unambiguous, it should be enforced according to its terms." Acosta, Inc. v. Nat'l Union Fire Ins. Co., 39 So. 3d 565, 573 (Fla. Dist. Ct. App. 2010) (citation and quotation marks omitted). Allowing Buckley Towers to claim RCV damages without repairing or replacing entirely removes the plaintiff's obligations under the Replacement Cost Value section of the contract. The parties freely negotiated

for that contractual provision and it is not the place
of a court to red-line that obligation from the contract.

Nor is it a defense to say that it would be costly for
Buckley Towers to comply with the insurance contract as
written. "Inconvenience or the cost of compliance [with
contractual terms], though they might make compliance a
hardship, cannot excuse a party from the performance of
an absolute and unqualified undertaking to do a thing
that is possible and lawful." N. Am. Van Lines v.
Collyer, 616 So. 2d 177, 179 (Fla. Dist. Ct. App.
1993). Although Buckley Towers may be unable to receive
the full range of benefits of their contract without an
advance payment under Florida law, that cost and
inconvenience may not relieve them of repairing the
building prior to claiming RCV damages.

Buckley Towers, 395 F. App'x at 663.

It is undisputed that the repairs have not been completed.
Accordingly, the Court will enter summary judgment in favor of
defendant finding that plaintiff may not recover RCV damages at
this time.

**C. Matching Damages**

Defendant argues that pursuant to the Policy plaintiff is
precluded from seeking "matching" damages, i.e., "replacement of
undamaged property to ensure that it matches replacements to
physically damaged materials." (Doc. #50, pp. 16-18.) The Policy
provides coverage for "direct loss" to the residence. (Doc. #46-
1, p. 14.) Because replacement of undamaged property does not
constitute property that suffered a "direct loss," defendant
argues matching damages are inappropriate. (Doc. #50, pp. 16-18.)
Plaintiff responds that because the need to replace the roof is

not merely based on matching, there is a question of fact "as to the proper methodology of repair due to the physical damage to the roof itself."  (Doc. #61, pp. 12-14.)

The Court agrees with defendant that matching damages do not fall within the Policy's definition of "direct loss."  See Palm Bay Yacht Club, 2012 WL 13012457, *4 ("[T]he Court agrees with QBE that it owes no coverage for costs related to matching or uniformity.  The policy provides that QBE will pay for 'direct physical loss of or damage' to the covered property resulting from any covered cause of loss.  Palm Bay cites no policy provision showing its entitlement to matching of undamaged property to newly-repaired property."); Ocean View Towers, 2011 WL 6754063, *10 ("QBE argues that the policy provides coverage only for 'direct physical loss or damage' and does not cover the replacement of undamaged property to ensure 'matching.'  The Court agrees.").

As acknowledged by defendant, section 626.9744(2), Florida Statutes, provides that in homeowner insurance claims in which a loss requires replacement of items and the replaced items do not match in quality, color, or size, "the insurer shall make reasonable repairs or replacement of items in adjoining areas." However, the statute's requirements apply "[u]nless otherwise provided by the policy."  § 626.9744, Fla. Stat.  Here, because the policy limits coverage to "direct" losses, section 626.9744(2) would not be applicable.  See Vazquez v. Citizens Prop. Ins. Corp.,

304 So. 3d 1280, 1285 (Fla. 3d DCA 2020) ("Ms. Vazquez's interpretation further disregards the plain text of the matching statute, which clearly defers to the policy as controlling."). Accordingly, the Court grants summary judgment in defendant's favor on this issue. See id. (rejecting argument that matching costs are part of actual cash value).[5]

**D. Ordinance or Law Damages**

For an additional premium, the Policy provides "coverage for costs associated with the enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or structure" insured under the Policy. (Doc. #46-1, p. 57.) However, the coverage under this provision applies to costs "incurred" as a result of an ordinance or law. (Id.) Defendant argues that because plaintiff has not undertaken any repairs of the roof, it has not incurred any costs and, therefore, is not entitled to ordinance or law damages. (Doc. #50, pp. 18-19.)

"'Ordinance and Law' is the cost of bringing any structure (here, the roof) into compliance with applicable ordinances or laws." Jossfolk v. United Prop. & Cas. Ins. Co., 110 So. 3d 110,

---

[5] The Court's ruling is limited to the issue of whether matching damages constitute "direct loss" under the Policy, and does not preclude plaintiff's suggestion that replacement of all the roof tiles is required by the Florida Building Code, or determine whether such a replacement is covered under any other Policy provision.

111 (Fla. 4th DCA 2013).  In similar situations, several courts, including the Eleventh Circuit, have determined an insured was not entitled to such costs when the property was never repaired or replaced.  See, e.g., Buckley Towers, 395 F. App'x at 665 ("[U]nder Florida law and under the terms of the contract, Buckley Towers is not entitled to law and ordinance damages because it never repaired the property and never actually incurred increased damages due to the enforcement of laws or ordinances."); Oriole Gardens Condo. Ass'n I v. Aspen Specialty Ins. Co., 875 F. Supp. 2d 1379, 1385 (S.D. Fla. 2012) (granting summary judgment on issue of whether party could recover "the increased costs of construction resulting from compliance with an ordinance or law" because "the policy makes clear that an insurer must first repair or replace the damaged property before seeking benefits for increased costs of construction," and no repairs or replacement had taken place); Los Palacios II Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co., 2011 WL 13100234, *6-7 (S.D. Fla. Sept. 6, 2011) (agreeing that insured was not eligible for coverage related to "increased cost of construction to comply with enforcement of applicable building codes" "because it failed to actually repair or replace the damaged property, as the Policy requires").  While these cases support defendant's argument that plaintiff is not entitled to ordinance or law damages, the Court nonetheless finds summary judgment

inappropriate because there is a genuine issue of material fact as to whether the costs have been "incurred."

The record indicates Farrington has entered into a contract with plaintiff to make repairs to his roof.  (Doc. #3-1, p. 6.) It also indicates that one of the reasons repairs are allegedly required is to comply with Florida's Building Code.  (Doc. #47-1, pp. 71-72; Doc. #49-1, pp. 77-78).  While the Florida Supreme Court has held that an insured must have "incurred an additional loss in order to recover under the supplemental coverage," it has also agreed that "'to incur' means to become liable for the expense, but not necessarily to have actually expended it."  Ceballo, 967 So. 2d at 815.  The Court finds whether any ordinance or law damages have been "incurred" in this case is a question for the jury.  See Jossfolk, 110 So. 3d at 113 (finding insurer "incurred additional loss" when the city "required compliance with current ordinances in order to complete repairs"); Everhart v. Citizens Prop. Ins. Corp., 90 So. 3d 374, 375 (Fla 1st DCA 2012) (Makar, J., specially concurring) (suggesting "entering a written contract" to rebuild storm-damaged home would constitute incurring liability for purposes of "law and ordinance" coverage). Accordingly, defendant's request for summary judgment on this issue is denied.

**E. Screen-Related Repair Damages**

Finally, defendant moves for partial summary judgment on the issue of whether the Policy covers the cost of rescreening Farrington's pool enclosure and the attached door. (Doc. #50, pp. 19-20.)  The Policy contains a "Limited Screened Enclosure and Carport Coverage" endorsement that specifically states it "does not provide coverage for screen material or costs associated with removing or replacing screens." (Doc. #46-1, p. 71.)  In response, plaintiff acknowledges that the endorsement excludes coverage for these items and to the extent the costs are contained in its estimate, plaintiff withdraws its claim for such items.  (Doc. #61, p. 15.)  Given plaintiff's withdrawal, this portion of defendant's motion has been rendered moot.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #50) is **GRANTED in part and DENIED in part** as follows:

1. Defendant's request for summary judgment on the issues of prompt notice and ordinance and law damages is **denied;**

2. Defendant's request for summary judgment on the issues of replacement cost value damages and matching damages is **granted;** and

3. Defendant's request for summary judgment on the issue of screen-related repair damages is **denied as moot.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___9th___ day of

March, 2021.


JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record