UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CMR CONSTRUCTION & ROOFING, LLC A/A/O LAWRENCE FARRINGTON,

    Plaintiff,

v.      Case No: 2:19-cv-442-FtM-29MRM

ASI PREFERRED INSURANCE CORPORATION,

    Defendant.

**OPINION AND ORDER**

    This matter comes before the Court on defendant's Motion to Strike Plaintiff's Damages Expert Ryan Peak and Incorporated Memorandum of Law (Doc. #52) filed on September 4, 2020. Plaintiff filed an Opposition (Doc. #57) on September 18, 2020. Also before the Court are defendant's Motion in Limine (Doc. #53) filed on September 4, 2020, to which plaintiff filed an Opposition (Doc. #58) on September 18, 2020, and defendant's Second Motions [sic] in Limine (Doc. #78) filed on December 3, 2020, to which plaintiff failed to respond. For the reasons set forth below, the motion to strike is denied, and the motions in limine are granted in part and denied in part.[1]

---

[1] Plaintiff requests a hearing on two of the motions. (Doc. #57, p. 5; Doc. #58, p. 3.) The Court finds oral argument

**I.**

Plaintiff CMR Construction & Roofing, LLC (plaintiff or CMR), as assignee of non-party Lawrence Farrington (Farrington or the insured), has filed a breach of contract claim against defendant ASI Preferred Insurance Corporation (defendant or ASI) regarding Farrington's home insurance policy and damage allegedly caused by Hurricane Irma. (Doc. #3.) Defendant has now filed a motion to strike plaintiff's proposed damages expert (Doc. #52), and motions to exclude various topics from being discussed at trial (Doc. #53; Doc. #78.) The Court will begin by addressing the motions in limine.

**A. Motions in Limine**

A motion in limine is a "motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984). These motions "are generally disfavored." Acevedo v. NCL (Bah.) Ltd., 317 F. Supp. 3d 1188, 1192 (S.D. Fla. 2017). "Evidence is excluded upon a motion in limine only if the evidence is clearly inadmissible for any purpose." Id. (marks and citation omitted). Additionally, as the Supreme Court has cautioned:

---

unnecessary to decide the motions and therefore plaintiff's request will be denied.

> The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.

Luce, 469 U.S. at 41–42.  A denial of a motion in limine is not a ruling which affirmatively admits any particular evidence.  Thus, while a subject matter is not excluded, the Court makes no determination of the admissibility of any anticipated specific testimony from the witness.

Defendant requests the Court to prohibit plaintiff from (1) asserting claims for replacement-cost value (RCV) damages, (2) asserting claims for "matching" damages, (3) asserting claims for ordinance or law damages, (4) mentioning the TAS 106 testing guidelines, (5) referencing claims handling or bad faith, and (6) referencing the replacement of any neighboring roofs.  (Doc. #53, p. 1; Doc.#78, pp. 3-5.)  As to the first three requests, the Court previously ruled on these issues when it granted in part and denied in part defendant's motion for summary judgment.  (Doc. #83.)  Specifically, the Court found plaintiff was precluded under the policy from seeking RCV and matching damages, but may have a claim for ordinance or law damages depending on whether a jury finds

such damages have been "incurred."[2] (Id. pp. 16-24.) Accordingly, the Court will focus its analysis on the other three requests.

### 1. TAS Testing Guidelines

At a deposition, plaintiff's engineering expert, Derek Cronin, testified about lifted roof tiles at Farrington's home after the hurricane. During the testimony, Cronin was asked how he ruled out other potential causes of lift, and Cronin responded as follows:

> Basically, the way we looked at it was the order of magnitude: How many of these tiles lifted, to what percentage they're lifted, et cetera, we felt that this is not what you would normally see in a roof. It also compared to work we do on new construction, we use the TAS 106 lift test to determine, you know, the rigidity of roofs and, you know, how does a typical roof work as far as lift is concerned. So we compare a lot of it to new construction as far as how would a roof feel.

(Doc. #47-1, p. 60.) The following exchange then occurred between Cronin and defendant's counsel:

> COUNSEL: So that TAS 106 test, that's for new roofs, correct?
>
> CRONIN: Yes.
>
> COUNSEL: And so that wouldn't really be a fair comparison to a roof that's now 17 years old, correct?

---

[2] To the extent defendant seeks to exclude portions of plaintiff's repair estimate because it includes RCV, matching, and ordinance or law damages (Doc. #53, pp. 5-9), the Court will deny the request without prejudice. The estimate was created prior to the Court's summary judgment ruling addressing these issues. If plaintiff seeks to introduce evidence relating to one of these topics at trial, defendant may re-raise its objection.

> CRONIN: It's not that it's a fair analysis, but it gives us data as far as how a newer roof would perform to roof tests. So although we're not doing the TAS 106 as a lift test on the roof, because we do the TAS 106 as a lift test on new roofs, that data we get for the rigidity and resistance of new roofs compared to these older roofs is partly how we can help formulate how a roof should feel, how a roof should actually function when you're out there.
>
> COUNSEL: So this would – this particular roof would fall under the category of an older roof, correct?
>
> CRONIN: Correct. This is an older roof. The TAS 106 would not necessarily be an appropriate test for this roof, but because we've done so many of those tests on newer roofs and other roofs and even the TAS 106 test we've done on past projects for Hurricane Irma claims, that's part of how we came about our means and methods for understanding what the resistance of a roof assembly should have.

(Id. pp. 60-61.)

In addition to the above testimony, defendant has offered its expert's report on the damages, which includes the following information:

> The [Cronin Engineering] report details the results of their tile uplift testing. The protocol used for the tile testing, although not identified in the report, was equivalent to the protocol for TAS 106, which is part of the Florida Building Code. This test was developed to be used in Broward and Dade Counties only (High Velocity Hurricane Zones) as a product quality control test prior to final roof inspection for testing tile fastening at the time of installation as part of the permitting process. The test was not designed to be performed on roofs that have been in service for 21 years, as these had. The test was never intended to be used as part of a post-storm related damage assessment of the roof.

(Doc. #53-1, p. 13.)

5

In its motion, defendant argues that plaintiff's expert should be precluded from referencing the TAS 106 test because it is irrelevant. (Doc. #53, p. 9.) Plaintiff does not specifically address this argument, but rather states generally that the TAS 106 evidence cannot be excluded because it relates "to issues of law that have not yet been determined by this Court." (Doc. #58, p. 2.) The Court will grant defendant's motion on this issue, at least as a preliminary matter.

Rule 703 of the Federal Rules of Evidence "allows an expert to base his opinion on facts or data that would otherwise be inadmissible . . . if other 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion.'" Broussard v. Maples, 535 F. App'x 825, 828 (11th Cir. 2013) (quoting Fed. R. Evid. 703). Furthermore, "[u]nless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data." Fed. R. Evid. 705. However, "the expert may be required to disclose those facts or data on cross-examination." Id.

Here, defendant does not seek to preclude the expert from offering an opinion on the roof damage because it is based in part on the TAS 106 test, but rather seeks to prevent the expert from referencing the test during his testimony. Because it appears undisputed the TAS 106 test applies to new construction, and apparently only in Broward and Dade Counties, the test would seem

6

to have no relevance to the condition of Farrington's decades-old roof located in Lee County. Accordingly, the Court will grant defendant's motion to the extent it seeks to prevent the expert from referencing the TAS 106 test during his testimony on direct examination.

### 2. Claims Handling or Bad Faith

In its Second Motions [sic] in Limine, defendant seeks to preclude plaintiff from introducing any testimony and/or evidence regarding "ASI's claims handling, accusations of bad faith and/or common claims handling standards." (Doc. #78, p. 1.) Defendant argues such testimony or evidence would be irrelevant and highly prejudicial. (Id. p. 3.) As plaintiff has failed to respond to this motion, the Court will construe the requested relief as unopposed. See Rule 3.01(c), Local Rules of the United States District Court for the Middle District of Florida (noting that if a party fails to timely respond to a motion, "the motion is subject to treatment as unopposed").[3]

---

[3] It is unclear if plaintiff simply did not respond to the motion or if it does not oppose the requested relief. In the motion's Certificate of Conference, defendant's counsel states that "she conferred with Plaintiff counsel regarding the relief sought in this motion and that Plaintiff counsel **objected/did not object** to the relief sought herein." (Doc. #78, p. 5.) Regardless, the motion will be considered as unopposed pursuant to the Court's Local Rules.

Having reviewed the matter, the Court will grant the request in part. The Court agrees that evidence relating to defendant's claims handling procedures in general is irrelevant in this breach of contract action. See Palmetto 241 LLC v. Scottsdale Ins. Co., 2020 WL 2736646, *6 (S.D. Fla. May 26, 2020) (noting that "[e]vidence of Defendant's claims handling practices and procedures in other claims" "is not relevant to this matter"); Lumpuy v. Scottsdale Ins. Co., 2013 WL 1775048, *3 (M.D. Fla. Apr. 25, 2013) ("[E]vidence relating to Defendant's general claims handling practices and procedures is not relevant to this breach of contract action."); Kennedy v. Provident Life & Acc. Ins. Co., 2009 WL 3048683, *2 (S.D. Fla. Sept. 18, 2009) (recognizing that under Florida law, "documents and testimony regarding the insurer's claims handling or general business practices are irrelevant to the issue of whether the insured is entitled to the coverage claimed"). Accordingly, such evidence is inadmissible.

However, evidence relating to defendant's handling of the claim in this case is relevant, as may be whether defendant acted in good or bad faith. See SFR Servs., LLC v. Lexington Ins. Co., 2021 WL 322367, *2-3 (M.D. Fla. Feb. 1, 2021) (denying motion to preclude evidence or arguments "that allege, infer, and/or implies that [insurer] has handled the Insured's claims in bad faith" because "[w]hile there can be no bad faith claim asserted, evidence from which bad faith could be inferred can also support the breach

8

of contract claim"); Centre Hill Courts Codon. Ass'n, Inc. v. Rockhill Ins. Co., 2020 WL 496065, *2 (S.D. Fla. Jan. 30, 2020) ("Defendant seeks to exclude evidence that Defendant acted in good faith or bad faith until this coverage action is resolved. However, as Plaintiff righty notes, the parties' post-loss actions are directly relevant to establishing the breach of insurance contract claims at issue in this case. Moreover, Defendant provides no explanation for why such evidence should be 'highly prejudicial' here. Thus, Defendant has failed to establish that the evidence of whether Defendant acted in good or bad faith is clearly inadmissible for any purpose.").

Accordingly, the Court will grant the motion as it pertains to defendant's claims handling in general, but deny it without prejudice as to defendant's claims handling and bad faith in this case.

### 3. Neighboring Roof Replacements

The Second Motions [sic] in Limine also seeks to prevent plaintiff from introducing any testimony and/or evidence "of work being performed on any other roof" or defendant's "payments for other roofs." (Doc. #78, p. 4.) The Court will grant the request, but without prejudice to plaintiff demonstrating relevance at trial. See Palmetto, 2020 WL 2736646, *6 ("Defendant requests the Court preclude Plaintiffs from introducing testimony and evidence regarding conditions of properties other than the subject

9

property. . . . Upon review, the Court agrees that evidence of conditions of other properties is not relevant in this action. The conditions of other properties would not make it more or less likely that Defendant breached its contract based upon facts and conditions unique to Plaintiff's property and the terms of the policy.").

### B. Motion to Strike

Finally, defendant seeks to strike plaintiff's damages expert, Ryan Peak. (Doc. #52.) Peak has worked for plaintiff "somewhere between 12 and 14 years" in a variety of positions, including as a salesman and a general manager. (Doc. #49-1, pp. 13, 14.) Peak was the person who met with Farrington and prepared the estimate to replace his roof. (Id. pp. 15-16; Doc. #49-2, pp. 91-95.) Defendant seeks to strike Peak as an expert witness because (1) he is not qualified to testify on acceptable methods of repairs, and (2) his financial interest in the outcome of the trial prevents him from serving as an expert.[4] (Doc. #52, pp. 4-6.) Having reviewed the arguments and Peak's deposition testimony, defendant's motion will be denied.

---

[4] Defendant also seeks to strike any testimony from Peak regarding matching costs. (Doc. #52, p. 7.) This issue was rendered moot by the Court's ruling on defendant's summary judgment motion.

Under Federal Rule of Civil Procedure 702, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education."  Defendant first argues that Peak is not qualified to testify about the need for a full roof replacement, the application of Florida's building code, or the feasibility of a repair rather than a replacement because "Peak's experience and knowledge focuses on roofing sales," and he "does not actually perform the repairs."  (Id. p. 5.)  Peak's testimony, however, does not support defendant's argument:

> COUNSEL: Okay. And so while working for CMR have you ever actually participated in replacing the roof? Meaning, got up on the roof and done the repair yourself?
>
> PEAK: Yes, ma'am.
>
> COUNSEL: Okay. Have you done that in Florida?
>
> PEAK: I didn't install the whole roof but, yes, I've got up there and done some, yes, ma'am.
>
> COUNSEL: Right. Okay. That's what I mean, just participated in the process. And about how in [sic] roofs would you say you've participated in repairing or replacing while working for CMR only? And you can give me a guesstimate.
>
> PEAK: $30 to $50 million dollars worth give or take.

(Doc. #49-1, pp. 14-15.)  Thus, while Peak currently works as a sales manager (Doc. #49-1, p. 14), he does have roofing-repair experience.  See Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) ("An expert is not necessarily unqualified simply because her experience does not

11

precisely match the matter at hand."). Having reviewed Peak's testimony regarding his roofing experience and knowledge, the Court finds he is qualified to testify regarding the alleged damages in this case. See Deputy v. Hartford Ins. Co. of the Midwest, 2020 WL 5807997, *3 (M.D. Fla. June 1, 2020) ("This inquiry [into whether a witness is qualified to testify as an expert] is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." (citation omitted)).

Defendant next argues that Peak cannot serve as an expert because he has a financial interest in the outcome of the trial. (Doc. #52, pp. 5-6.) During his deposition, Peak testified that he and defendant split the profits from a roofing repair equally. (Doc. #49-1, pp. 16-17.) Defendant argues that because Peak's compensation is contingent on the outcome of the case, he cannot serve as an expert witness. (Doc. #52, p. 6); see also Crowe v. Bolduc, 334 F.3d 124, 132 (1st Cir. 2003) ("The majority rule in this country is that an expert witness may not collect compensation which by agreement was contingent on the outcome of a controversy. That rule was adopted precisely to avoid even potential bias.").

Defendant's argument is misplaced. Peak is an employee of defendant and his compensation relates solely to the profits made from the repair of Farrington's roof. This would be true

12

regardless of the outcome of this case, and therefore it cannot be said that Peak's compensation is contingent. To the extent Peak and defendant's financial agreement is relevant, such an issue would go to the credibility of Peak's testimony rather than its admissibility. See Adams v. Lab. Corp. of Am., 760 F.3d 1322, 1332 (11th Cir. 2014) ("Bias in an expert witness's testimony is usually a credibility issue for the jury.").

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion to Strike Plaintiff's Damages Expert Ryan Peak and Incorporated Memorandum of Law (Doc. #52) is **DENIED**.

2. Defendant's Motion in Limine (Doc. #53) is **GRANTED in part and DENIED in part as moot.** The motion is **granted** to the extent it seeks to preclude plaintiff's expert from referencing the TAS 106 test during direct examination. The motion is **denied as moot** to the extent it seeks to preclude plaintiff from asserting claims for replacement-cost value, matching, and ordinance or law damages.

3. Defendant's Second Motions [sic] in Limine (Doc. #78) is **GRANTED in part and DENIED in part**. The motion is **granted** to the extent it seeks to preclude the introduction of evidence of defendant's general claims handling procedures, and payments for claimed damage or repairs to

13

other properties within the insured's neighborhood. The motion is **denied** to the extent it seeks to preclude evidence of claims handling in this case or evidence from which bad faith could be inferred.

4. Plaintiff's request for a hearing on the motions is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this  31st  day of March, 2021.

*[signature]*

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record